No. 22-1673

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

TERRY PROCTOR, APPELLANT,

**v.**

CARLOS DEL TORO, SECRETARY, U.S. DEPARTMENT OF THE NAVY, APPELLEE.

_____

*Appeal from the United States District Court for the District of Maryland*
*Honorable Timothy J. Sullivan, United States Magistrate Judge*

_____

BRIEF FOR THE APPELLEE
_____

EREK L. BARRON
**United States Attorney**

MATTHEW A. HAVEN
**Assistant United States Attorney**
**36 South Charles Street, 4th Floor**
**Baltimore, Maryland 21201**
**(410) 209-4800**

*Counsel for Appellee*

September 16, 2022

# TABLE OF CONTENTS

STATEMENT OF THE CASE................................................................1

STATEMENT OF FACTS ...................................................................2

SUMMARY OF THE ARGUMENT .....................................................6

STANDARD OF REVIEW ..................................................................7

ARGUMENT .....................................................................................8

     I.     The Discovery Sought By Appellant Would Not Have Altered Material Facts On The Question Of Consideration. .............................................8

     II.    The Settlement Agreement Was Supported By  Sufficient Consideration. .......................................................................13

     III.   Appellant Knowingly And Voluntarily Released His Claims When He Signed The Settlement Agreement While Represented By Counsel…………………………………………………….……15

CONCLUSION ................................................................................20

CERTIFICATE OF COMPLIANCE...................................................21

CERTIFICATE OF SERVICE ...........................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................................6

*Cassiday v. Greenhorne & O'Mara, Inc.*,
220 F. Supp. 2d 488 (D. Md. 2002)………………………………………...9, 13, 14

*Chernick v. Chernick*, 327 Md. 470 (1992) ........................................................8, 9

*Dorn v. Gen. Motors Corp.*, 131 Fed. Appx. 462 (6th Cir. Apr. 28, 2005) ............15

*Evans v. Techs. Applications Serv.*, 80 F.3d 954 (4th Cir. 1996) .............................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....... 6, 7, 8

*Mungin v. Calmar Steamship Corp.*, 342 F. Supp. 484 (D. Md. 1972)...................15

*Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943 (4th Cir. 1995).....................9

*Wastak v. Lehigh Valley Health Network*, 342 F.3d 281 (3d Cir. 2003)..................8

**Rules**

Fed. R. App. P. 32(a)(6).........................................................................................17

Fed. R. App. P. 32(a)(7)(A) ...................................................................................17

Fed. R. App. P. 43(c)(2) ..........................................................................................1

**Regulations**

5 C.F.R. § 752.404(b) ..............................................................................................8

## STATEMENT OF THE CASE

On April 5, 2021, Terry Proctor ("Appellant") sued Carlos Del Toro,[1] Secretary of the U.S. Department of the Navy ("Appellee" or the "Navy"), in the United States District Court for the District of Maryland. *See* JA 0005-19. Appellant asserted claims for race discrimination, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964, and age discrimination under the Age Discrimination in Employment Act. JA0013-19. On October 27, 2021, Appellee moved to dismiss or, in the alternative, for summary judgment. JA0020. On January 7, 2022, Appellant opposed the motion and filed a Motion for Discovery. JA0121-24. On March 14, 2022, the Navy filed a reply memorandum and opposition to the Motion for Discovery. *See* JA 0003. Appellant filed a Reply in support of his Motion for Discovery on April 7, 2022. *Id.* On April 26, 2022, the District Court issued a memorandum opinion and order granting summary judgment in Appellee's favor. JA0139-158.

After Appellant filed a Motion to Alter or Amend on May 24, 2022, JA 0159-162, the District Court denied the Motion without prejudice, allowing Appellant to file a corrected Motion to Alter or Amend stating the particular bases upon which he seeks relief. JA 0166-167. On May 26, 2022, Appellant noted his appeal to this

---

[1] Appellant originally sued Thomas Harker, Acting Secretary at the time of the Complaint. Under Fed. R. App. P. 43(c)(2), Carlos Del Toro, the recently confirmed Secretary, "is automatically substituted as a party."

Court. JA 0168. Thereafter, on June 21, 2022, the District Court denied Appellant's

Motion to Alter or Amend, as he had not filed a corrected Motion. JA 0170-171.

## STATEMENT OF FACTS

Appellant is an African American male born on April 6, 1960. JA 0006 ¶ 3.

From November 1991 to April 2020, Appellant was employed in the Public Works

Department at the Naval Surface Warfare Center in Indian Head, Maryland. JA 0007

¶ 12. As of April 2020, Appellant was a Boiler Plant Supervisor I, a Grade 11

position. *Id.* ¶ 13. In this position, Appellant "was responsible for ensuring that

physical plant systems in [the Navy's] buildings were functioning during his regular

12-hour work shifts." *Id.* ¶ 15. Put another way, Appellant was responsible for

"monitoring, operation and immediate repairs/maintenance necessary to keep all

utility systems (steam, electricity, water, sanitary sewer, river water fire suppression

systems) functional and operating for the entire installation." JA 0024. Appellant

was also a supervisor, and at times he was the "only supervisor on duty." *Id.*

Appellant alleges that his problems with the Navy began in late 2018 and early

2019. He alleges that the Navy posted a vacancy for "Boiler Plant Supervisor, WS-

5402-13, a Grade 13 position in the PWD at the Indian Head Facility." JA 0008 ¶

19. Appellant alleges he was qualified and applied for that position. *Id.* ¶ 20.

Appellant alleges that he was "informed that he was not selected for the Boiler Plant

Supervisor vacancy" on January 4, 2019. JA 0009 ¶ 21. Thomas Baldwin, a Caucasian, 40-year old male, was selected for the vacancy. *Id.*

Thereafter, in January 2019, Appellant alleges that he "contacted [the Navy's] EEO representatives in an effort to file an administrative EEO complaint" and alleges that those representatives refused to process his informal complaint. *Id.* ¶ 23. Appellant alleges that "he was precluded from filing a formal complaint" regarding his non-selection at that time. *Id.*

Months later, on March 25, 2019, the Navy issued Appellant a Proposed Removal from Federal Service for "abandoning his workstation to engage in personal activities." *Id.* ¶ 25. The proposal cited eight documented occasions where Navy employees observed Appellant's vehicle leaving or missing from the workplace premises and returning to the premises hours later; or observed Appellant's vehicle at an unofficial location for hours during Appellant's work shift after following Appellant's vehicle off base. JA 0021-0023.[2] Appellant "vociferously opposed" the Proposed Removal. JA 0010 ¶ 27. Approximately one year later, Appellant alleges that on March 12, 2020, he was notified "that his position had been reduced in status and grade, to Boiler Plant Equipment Mechanic,

---

[2] According to the Proposal, Appellant stated that he could not remember where he was during the dates and times referenced and acknowledged that he did leave the workplace without permission for at least brief periods of time to assist his father with problems related to his father's bus business. *Id*. Further inquiries were made and other employees noted that Appellant was away from the workplace for extended periods of time. *Id*.

a Grade 10 position."[3] *Id.* ¶ 29. On March 20, 2020, Appellant met with an EEO counselor to file an informal complaint of discrimination. *Id.* ¶ 30.

The Navy also presented Appellant with a draft Settlement Agreement and Release. JA 0011 ¶ 31. On April 1, 2020, Appellant signed the Settlement Agreement and Release. *See* JA 0033-0035. The Navy signed the Agreement on April 2, 2020, making it valid and binding on both parties. *Id.* The Settlement Agreement contains a release and waiver, stating:

> [t]he Agency is released from any and all claims or demands the Employee may have relating to Employee's employment with the Navy based upon events occurring prior to and on the effective date of this agreement. This includes a release of any rights under Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination on the basis of race, color, national origin, religion, sex or retaliation; the Age Discrimination in Employment Act, which prohibits age discrimination in employment based on disability. This release covers both claims that the Employee knows about and those he may not know about.

JA 0034 ¶ 6(h). Appellant represented that he fully understood and "had the opportunity to thoroughly review this Agreement with [his] representative counsel and that [he is] voluntarily entering into this Agreement." JA 0033 ¶ 2. Appellant further agreed that the settlement "constitutes a waiver of all complaints, grievance, appeals or any other claims that were or could have been filed related to [Appellant's] employment with [the Navy] up to and including the date of this

---

[3] In December 2019, requested assistance from HR to facilitate a settlement. Staffing issues delayed the Navy's decision on the Proposed Removal and presentation of a draft Settlement Agreement.

settlement." *Id.* ¶ 4. Immediately above the parties' signature blocks, the Agreement contains language in "ALL CAPS" advising Appellant to read it carefully before signing and indicating that the Agreement "CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS." JA 0035.

Substantively, Settlement Agreement and Release states that it was entered into "in full and final settlement of the Proposed Removal issued to the [Appellant] on March 2019." JA 0033 ¶ 1. Appellant agreed to release the Navy "from any and all claims or demands [Appellant] may have relating to [Appellant's] employment with the Navy . . . includ[ing] a release of any rights under Title VII . . . the ADEA . . . and the Rehabilitation Act." JA 0034 ¶ 6(h).

Of note, Appellant was represented by counsel well before he signed the Settlement Agreement and Release. On March 17, 2020, two weeks before Appellant signed the Settlement Agreement and Release, Appellant's counsel (Nathaniel Johnson) sent an email to the Navy indicating that his office had been retained to represent Mr. Proctor relating to his EEO issues. JA 0036. On March 24, 2020, Appellant submitted to the Navy a "Designation of Representative" indicating Mr. Johnson would be representing him in connection with his EEO Complaint. JA 0037. Moreover, Mr. Johnson, Appellant's counsel in this case as well, submitted a letter to the Navy on March 24, 2020, indicating that his office had been retained to represent Appellant in his EEO matter. JA 0038-0039. Again, Appellant did not sign

the Settlement Agreement until a week later, on April 1, 2020. JA 0035. And Mr.
Johnson himself transmitted the Settlement Agreement, signed by Appellant, to the
Navy on April 1, 2020. JA 0040. When Mr. Johnson submitted the signed Settlement
Agreement to the Navy, he made no assertion that Appellant considered the signed
document to be legally void. JA 0040. Instead, Appellant and his counsel relied on
the terms of the signed Settlement Agreement to continue to collect a salary, annual
and sick leave, and Thrift Savings Plan contributions, and effectively retired from
federal service on April 30, 2020.

Only later, after attempting to claim that the Settlement Agreement and
Release was somehow void, on June 12, 2020, Appellant filed a formal complaint
of discrimination against the Navy. *See* JA 0041-0043. After completing an
investigation, on January 19, 2021, the Navy's Office of Equal Employment
Opportunity issued Appellant a Final Agency Decision, finding that the Navy did
not discriminate against the Appellant. JA 0044-0085. On April 5, 2021, Appellant
filed the instant lawsuit. *See* JA 0005. After judgment was entered for the Navy,
Appellant filed the instant appeal.

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment in the Navy's favor
because the Appellant signed a Settlement Agreement and Release while represented
by counsel, explicitly agreeing to release the very claims he asserted in his

Complaint. Appellant signed the Settlement Agreement and Release, which was transmitted to the Navy by Appellant's counsel, who has represented Appellant in connection with this case since March 2020. The Agreement clearly releases the Navy from all claims Appellant had relating to his employment with the Navy, and expressly includes a release of Title VII and ADEA claims. The Agreement also states, in all capital letters, that it "CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS." Because Appellant voluntarily settled and released all claims he asserted in his Complaint while represented by counsel, and because the discovery he sought would not have altered the facts material to the District Court's ruling, the Court should affirm.

## STANDARD OF REVIEW

The Court reviews "the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court and viewing the facts and inferences drawn from the facts in the light most favorable to. . . the nonmoving party." *Evans v. Tech. Apps. & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). Under Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to judgment in its favor if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To defeat summary judgment, Appellant, the non-moving party below, had to establish "that sufficient evidence supporting [a] claimed factual dispute be shown to require a jury or judge to resolve

the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of a scintilla of evidence in support of the [opposing party's] position is insufficient to defeat a motion for summary judgment." *Id.* at 252 (internal quotation marks omitted).

The Supreme Court has made it clear that at summary judgment, the court determines whether there is an issue for trial, not to determine the truth of the facts asserted. *See id.* at 250. If the entire record could not allow a rational factfinder to find for the nonmoving party, then there is no genuine issue to be resolved at trial and summary judgment is required. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

Appellant advances three main arguments in support of his appeal. Appellant argues that (1) he should have been permitted to take discovery to show that consideration supporting the Settlement Agreement was illusory, (2) the Settlement Agreement was void for lack of consideration, and (3) his waiver and release was not knowing and voluntary. Each of these arguments was considered and correctly decided by the District Court. The Court should affirm.

## I.   THE DISCOVERY SOUGHT BY APPELLANT WOULD NOT HAVE ALTERED MATERIAL FACTS ON THE QUESTION OF CONSIDERATION.

Appellant argues that the District Court "abused its discretion" when it denied his Motion for Discovery. Doc. 11 at 25. Specifically, Appellant argues that the

discovery he sought "was directly relevant to [his] argument that the Settlement Agreement was void because it was not supported by adequate consideration." *Id.* at 26. Appellant argues that the "primary consideration" supporting the Settlement Agreement was his decision to decline further participation in the disciplinary process. *Id.* Appellant argues that discovery may have shown that the Navy's disciplinary process "was a sham," and because it was a sham, there was no consideration. *See id.* Appellant incorrectly represents the Navy's argument and the District Court's findings on consideration, and his argument is also legally incorrect.

Appellant's argument rests on the false suggestion that the Navy was only able to establish sufficient consideration by arguing that Appellant declined further participation in the disciplinary process. *Id.* at 26-27. The Navy never took this position. Rather, the Navy and District Court relied on several pieces of adequate consideration to support the Settlement Agreement. The Navy argued, and the District Court agreed, that by signing the Settlement Agreement, Appellant continued to receive a salary for one month instead of being terminated and receiving $0. Pursuant to the Agreement, Appellant was required to resign by May 1, 2020, but the Navy was required to pay Appellant at a rate of $34.15 per hour until he retired on May 1, 2020.[4] JA 0033-0034 ¶¶ 6(f)-(g), 7(b). The Settlement Agreement

---

[4] Although the Navy was permitted to reduce his salary under the Settlement Agreement, Appellant's salary appears to have remained at $45.50 per hour until he retired. *See* JA 0138.

was signed by Mr. Proctor on April 1, 2020, meaning the Navy had to pay him at least approximately one month's salary before his voluntary retirement. *See id.*; *see* JA 0035. Had Appellant refused to sign the Settlement Agreement, the Navy had the right to terminate him immediately, in which case Appellant would have received $0 in salary from the Navy. *See* 5 C.F.R. § 752.404(b), (c), (g) (requiring agency to provide at least 30 days' notice for the proposed termination, allowing employee time to respond in this 30-day window, but allowing for termination any time thereafter).

The District Court correctly found that permitting Appellant to continue collecting a salary was sufficient consideration. JA 0150. In exchange for allowing Appellant to collect his salary and other benefits, the Navy gave up its existing right to terminate him. *See* JA 0150 (citing *Chernick v. Chernick*, 327 Md. 470, 479-80 (1992) ("Forbearance to exercise a right . . . or an agreement to forbear, constitutes sufficient consideration)). The District Court also correctly noted that consideration is sufficient if it provides the Appellant with anything at all, even if he views the consideration as minimal. JA 0150-0151. As the District Court correctly cited, a release is "supported by adequate consideration under the OWBPA [if] it provided something in addition to what the plaintiff was entitled to upon his termination—nothing." *Id.* (citing *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 294 (3d Cir. 2003) (internal citations and quotations omitted)).

10

Moreover, the Navy argued that Appellant chose retirement in lieu of facing termination, thereby avoiding the risk of having to indicate that he was terminated on applications for future employment. Clearly, Appellant could have and did place value on avoiding that risk. Together with his salary, annual and sick leave accrual, and Thrift Savings Plan contributions, Appellant received more than sufficient consideration for his assent to the Settlement Agreement. *See Chernick*, 327 Md. at 479-80. Last, Appellant signed the Settlement Agreement, while represented by competent counsel, expressly assenting to the fact that there was sufficient consideration. *See* JA 0114 ¶ 6.g. ("Employee further agrees that this retirement or resignation date is irrevocable and supported by valuable consideration."). Appellant's argument for more discovery – that the "primary" consideration for the Settlement Agreement was his decision to forego disciplinary proceedings – is wrong and should be rejected.

Perhaps of more importance, establishing that the Navy's disciplinary process was a "sham" would not aid Appellant's consideration defense. For example, even if Appellant discovered facts showing that the Navy's disciplinary process was a "sham" – the meaning of which is still unclear – those facts would not materially alter the fact that Appellant was permitted to continue collecting a salary and other benefits. Because the nonmovant must establish his need for discovery of facts material to the determinative legal question, *see Strag v. Bd. of Trs., Craven Cmty.*

11

*Coll.*, 55 F.3d 943, 954 (4th Cir. 1995), the District Court correctly granted the Navy's summary judgment motion.

In addition, although it is unclear from his brief, if Appellant is attempting to argue that discovery would have aided his voluntariness defense, the District Court correctly noted that all facts needed to mount this defense were already in Appellant's possession. JA 0156-0157. The factors relevant to the "knowing and voluntary" standard are as follows:

> (1) the employee's education and business experience; (2) the respective roles of the employer and employee in determining the terms and conditions of the waiver; (3) the clarity of the agreement; (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration.

*Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 493 (D. Md. 2002) *aff'd,* 63 Fed. Appx. 169 (4th Cir. May 21, 2003). On a simple review of each factor, it is clear that Appellant would be in possession of all facts he needs to assert this defense. For example, Appellant's education and experience, and the amount of time he had to study the Settlement Agreement are known by Appellant. As such, no amount of discovery regarding voluntariness would alter the Court's analysis of these factors. The Court should reject Appellant's argument regarding the need for discovery.

Last, contrary to Appellant's general assertions about what the District Court "ignored," the District Court correctly noted that "[s]ummary judgment is usually inappropriate where the parties have not had an opportunity for reasonable discovery." JA 0155. The District Court further noted that the non-moving party may file a Rule 56(d) declaration explaining the discovery needed to address the summary judgment motion, but that Rule 56(d) motions are "properly denied where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Id.* The latter scenario is present here – Appellant's requested discovery would not have created a genuine dispute of material fact. The Court should affirm.

## II. THE SETTLEMENT AGREEMENT WAS SUPPORTED BY SUFFICIENT CONSIDERATION.

Appellant next argues that the District Court erred by failing to find that the Settlement Agreement was void for inadequacy of consideration. Doc. 11 at 27. Appellant then walks through each provision in Paragraph 6 of the Settlement Agreement, arguing that none of these provisions provided him with sufficient consideration. *Id.* As explained above and by the District Court, when Appellant signed the Settlement Agreement while represented by counsel, he was entitled to nothing from the Navy. *See* JA 0150-0151. Instead of facing immediate termination and receiving nothing, Appellant's assent to the Settlement Agreement allowed him to continue collecting a salary, annual and sick leave, and Thrift Savings Plan

contributions, and allowed him to retire instead of potentially having a termination on his record. *See* JA 0114 ¶ 7.b. (requiring the Navy to "[m]aintain the employee through the effective date of retirement at his Adjusted Basic Pay of $34.15 per hour"). On top of that, Appellant signed the Settlement Agreement with counsel, and the Agreement expressly states Appellant "agrees that this retirement or resignation date is irrevocable and supported by valuable consideration." *Id.* ¶ 6.g.

Whether Appellant agreed to a "lower" salary and whether he was eligible for retirement is irrelevant to the consideration analysis.[5] The consideration question turns on whether Appellant received anything of value in exchange for his assent. And because Appellant was entitled to nothing from the Navy on the day he signed the Settlement Agreement, Appellant derived value from the Navy's agreement to allow him to retire, continue collecting a salary, annual and sick leave, and Thrift Savings Plan contributions. *See supra* pgs. 9-11. There is sufficient consideration for Appellant's assent to the Settlement Agreement.

---

[5] Appellant also suggests there is no "evidence that . . . [the Navy] would have effected his removal." Doc. 11 at 34. The Navy's exact plans regarding Appellant's termination or removal are irrelevant. The fact remains that the Navy was able to terminate Appellant, and instead of exercising that right, the Navy allowed Appellant to collect certain benefits in exchange for his assent to the Settlement Agreement.

14

### III. APPELLANT KNOWINGLY AND VOLUNTARILY RELEASED HIS CLAIMS WHEN HE SIGNED THE SETTLEMENT AGREEMENT WHILE REPRESENTED BY COUNSEL.

Appellant last argues that the District Court erred by finding that his waiver and release of all claims was "knowing and voluntary." Doc. 11 at 35-39. Appellant argues that the District Court did not consider the seven factors in the "totality of circumstances" test, and argues that these factors "overwhelmingly demonstrate" that his clear waiver and release was involuntary. *See id.* Appellant is incorrect on both fronts.

Although the District Court did not expressly enumerate the seven factors identified by Appellant, the District Court clearly announced that it was applying the "totality of circumstances" test. JA 0153-0154 (weighing all relevant facts and holding that Appellant's waiver was knowing and voluntary when "considering the totality of circumstances"). Moreover, the District Court identified relevant facts that align with the seven factors in the "totality" test, and then the District Court properly applied those facts. This Court should do the same.

The District Court considered Appellant's business experience consistent with the first factor, finding that Appellant "had decades of experience working for the Navy," had "consistently performed above the Navy's expectations and had substantial experience in supervisory roles." JA 0153 (also finding Appellant "had the acumen to evaluate the simple terms of the Settlement Agreement"). Consistent

with the third factor, the District Court held that the "terms of the Settlement Agreement were simple and direct." JA 0153. The District Court was correct. The Settlement Agreement signed by Appellant has a clear release and waiver provision. *See* JA 0114 ¶ 6(h). In the Agreement, Appellant represented that he fully understood and "had the opportunity to thoroughly review this Agreement with [his] representative counsel and that [he is] voluntarily entering into this Agreement." JA 0113 ¶ 2. Appellant further agreed that the settlement "constitutes a waiver of all complaints, grievance, appeals or any other claims that were or could have been filed related to [Appellant's] employment with [the Navy] up to and including the date of this settlement." *Id.* ¶ 4. Immediately above the parties' signature blocks, the Agreement contains language in "ALL CAPS" advising Appellant to read it carefully before signing, and indicating that the Agreement "CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS." JA 0115. Both of these factors weigh heavily in favor of finding a voluntary waiver.[6]

Further still, consistent with the fourth factor, the District Court found that Appellant had "about four months to consider the general terms of the Settlement

---

[6] Also of note, the purpose of the Settlement Agreement was to dispose of the exact claims Appellant raised in his Complaint. In the very first paragraph, the Agreement states that it was entered into "in full and final settlement of the Proposed Removal issued to the [Appellant] on March 2019." JA 0113 ¶ 1. Appellant agreed to release the Navy "from any and all claims or demands [Appellant] may have relating to [Appellant's] employment with the Navy . . . includ[ing] a release of any rights under Title VII . . . the ADEA . . . and the Rehabilitation Act." JA 0114 ¶ 6(h). Counts I-IV fall directly under Title VII or the ADEA, and they all stem from the events of January 2019 to April 2020, including Appellant's non-selection in January 2019 and the Proposed Removal in March 2020. JA 0010-0012 ¶¶ 21-37. Appellant released the precise claims the Settlement Agreement was designed to resolve fully and finally.

Agreement (because he was provided a 'substantially similar' copy of the agreement in November 2019), and 21 days to consider the Settlement Agreement that he received on March 12, 2020." JA 0151; *see* JA 0133, 0134-0135. Consistent with the fifth and sixth factors, the District Court held that Appellant "had the assistance of an attorney" for at least two weeks during his consideration of the Settlement Agreement. JA 0152-0153; JA 0036 (email from Appellant's counsel to the Navy regarding representation); JA 0037 (designation of representative signed by Appellant and naming his counsel); JA 0038-0039 (letter of representation by Appellant's counsel); JA 0040 (email where Appellant's counsel transmits the signed Settlement Agreement to the Navy). And as mentioned above, the District Court considered the seventh factor when it found that the Settlement Agreement had sufficient consideration. JA 0150-0151. The District Court considered all relevant factors in the "totality" test, and its analysis was correct.

As argued in the District Court, this case is similar to *Cassiday*. There, the employee argued duress due to "her supposed financial problems complicated by the prospective loss of her job." *Cassiday*, 220 F. Supp. 2d at 492. The court found potential financial loss is not equivalent to duress, and because she was not "physically threatened" or "misled or duped" into signing her waiver, her assent was voluntary and "she remained free to reject the offer and pursue her legal remedies." *Id.* The court also found that the employee's tenure of more than twenty years was

17

"more than sufficient time for her to absorb considerable business experience." *Id.* at 493. The employee had approximately one month to study the document, consulted with her husband and attorney, the agreement was "written in non-complex, straightforward language," and was supported by sufficient consideration. *Id.* at 493-94. The court also placed emphasis on the terms of the agreement, wherein the employee "expressly affirmed that she was signing the agreement knowingly and voluntarily." *Id.* at 494. The court found the employee's waiver to be voluntary even where the employee alleged that her employer "refus[ed] to communicate with her attorney." *Id.* The Fourth Circuit affirmed this decision in an unpublished, per curiam opinion. *Cassiday v. Greenhorne & O'Mara, Inc.*, 63 Fed. Appx. 169 (4th Cir. May 21, 2003).

As demonstrated above, the facts here are materially indistinguishable from *Cassiday*. And Appellant does not support his conclusory argument that the Navy presented him with a "Hobson's Choice." As he did with the District Court, Appellant contends that a March 2020 meeting with the Navy was "very intimidating," and his "managers made it clear that his signature was expected . . . and that he would no longer work at the Indian Head facility." Doc 11 at 37. Appellant further contends that "there was no effort to negotiate" with him at this March 2020 meeting. *Id.* From the outset, Appellant overlooks the words of the Settlement Agreement he signed, which states that it "is the joint product of the Employee and the Agency, and it shall

not be construed nor interpreted against either party on the grounds of sole authorship." JA 0113 ¶ 3. Although there is no indication that Appellant sought to amend or reject this term, there is no indication that Appellant was precluded from seeking to negotiate. *See Cassiday*, 220 F. Supp. 2d at 493 (indicating same).

Even putting this term aside and accepting at face value all of Appellant's allegations, when measured against the voluntariness factors, Appellant's post-hoc perception of an imbalanced negotiation (factor two) is far outweighed by every other relevant factor. After this allegedly intimidating March 2020 meeting, Appellant retained counsel and had weeks to review the simply written terms of the Settlement Agreement and Release with counsel. JA 0152-0153; JA 0036; JA 0037; JA 0038-0039; JA 0040. Appellate had decades of business experience himself, and there was adequate consideration. There is simply no support for Appellant's position.

Appellant does not cite a single case analogous to his. Doc. 11 at 37-41. In fact, the cases he cites provide further support for the Navy's position. For example, in *Dorn v. Gen. Motors Corp.*, 131 Fed. Appx. 462 (6th Cir. Apr. 28, 2005), the Sixth Circuit rejected the employee's argument that the release was signed under economic duress. The court noted that accepting economic duress arguments where the employee is presented unattractive choices by the employer "would invalidate most, if not all, releases of claims in agreements conferring severance benefits on employees." *Id.* at 468. The Sixth Circuit's analysis applies here. Appellant signed

a clear and simple Settlement Agreement and Release while represented by counsel, and there is no evidence or suggestion of true duress or coercion. Rejecting the District Court's analysis on voluntariness with these facts would be contrary to established federal precedent and would be problematic for all employers. Indeed, "a settlement agreement enjoys great favor with the courts." *Mungin v. Calmar Steamship Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972). "[I]t is only in the most extraordinary circumstances that such a pact will be vacated, for the general principle is that a settlement agreement . . . voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court." *Id.* There are no extraordinary circumstances here. The Court should affirm the District Court's ruling.

## CONCLUSION

For the reasons Appellee states above, this Court should affirm the district court's judgment.

Respectfully submitted,

Erek L. Barron
United States Attorney

   /s/
Matthew A. Haven
Assistant United States Attorney

*Counsel for Appellee*

Date: September 16, 2022

20

## CERTIFICATE OF COMPLIANCE

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because:

- it does not exceed thirty (30) pages.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because:

- it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: September 16, 2022                    /s/
                                        _____
                                        Matthew A. Haven
                                        Assistant United States Attorney

                                        *Counsel for Appellees*

21

## **CERTIFICATE OF SERVICE**

I certify that on September 16, 2022, the foregoing document was served on

Appellant through the CM/ECF system.

Dated: September 16, 2022

_____
          /s/

  Matthew A. Haven
  Assistant United States Attorney

  *Counsel for Appellees*
